UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ERNEST S.,

                  Plaintiff,                      **DECISION AND ORDER**

       v.
                                    1:22-CV-00509 EAW

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.
_____

## INTRODUCTION

Represented by counsel, plaintiff Ernest S. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 17; Dkt. 19). For the reasons discussed below, the Commissioner's motion (Dkt. 19) is granted and Plaintiff's motion (Dkt. 17) is denied.

## BACKGROUND

Plaintiff filed his applications for DIB and SSI on November 4, 2019.  (Dkt. 14 at 25, 228-31).[1]  In his applications, Plaintiff alleged disability beginning April 28, 2018.  (*Id.* at 25, 228).  Plaintiff's applications were initially denied on February 13, 2020.  (*Id.* at 25, 130-39).  At Plaintiff's request, a telephonic hearing was held before administrative law judge ("ALJ") Stephan Bell on March 1, 2021.  (*Id.* at 25, 40-69).  On March 17, 2021, the ALJ issued a unfavorable decision.  (*Id.* at 25-34).  Plaintiff requested Appeals Council review; his request was denied on March 30, 2022, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 11-16).  This action followed.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.  <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings").  *Id*. §§ 404.1520(d), 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. §§ 404.1509, 416.909, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. §§ 404.1520(f), 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. §§ 404.1520(g), 416.920(g).   To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

## I.    The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920.  Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December

31, 2023.  (Dkt. 14 at 27).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since April 28, 2018, the alleged onset date.  (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: degenerative disc disease of the lumbar spine, mental health impairments variously diagnosed as bipolar disorder, major depressive disorder and anxiety disorder, and chronic pain syndrome.  (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id.* at 28).  The ALJ particularly considered the criteria of Listings 1.04, 12.04, and 12.06 in reaching his conclusion, as well as considering the effect of Plaintiff's obesity as required by Social Security Ruling ("SSR") 19-2p.  (*Id.* at 25-27).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional limitations:

> [Plaintiff] can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently, can sit for 6 hours, stand or walk for 6 hours, can frequently climb stairs and ramps, ropes, ladders and scaffolds, frequently balance, stoop, kneel, crouch and crawl, can perform simple, routine and repetitive tasks and make simple work-related decisions.

(*Id.* at 29).  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (*Id.* at 33).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could

perform, including the representative occupations of cleaner/housekeeping, photocopying machine operator, and cafeteria attendant. (*Id.* at 34). As a result, the ALJ concluded that Plaintiff was not disabled from the alleged onset date of April 28, 2018, through the date of the ALJ's decision. (*Id.*).

## II.     The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that (1) the ALJ improperly considered Plaintiff's activities of daily living, (2) the ALJ erroneously assessed medical opinion evidence, (3) the ALJ failed to appropriately emphasize the nature of Plaintiff's former employment, and (4) Plaintiff's non-attorney representative was terminally ill at the time of the hearing. The Court has considered these arguments and, for the reasons discussed below, finds them without merit.

### A.     Activities of Daily Living

It is well-settled that an ALJ may consider a claimant's activities of daily living when evaluating his credibility. *See, e.g., Coger v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 427, 436 (W.D.N.Y. 2018) ("While it is true that the capability to perform activities of daily living is not inherently inconsistent with a finding of disability, '[t]he law is clear that the ALJ may consider . . . [a claimant's] purported activities of daily living for the purposes of a credibility determination.'" (quoting *Cahill v. Astrue*, No. 1:11-CV-148, 2012 WL 3777072, at *5 (D. Vt. Aug. 29, 2012))); *see also Kimberly B. v. Comm'r of Soc. Sec.*, No. 5:22-CV-350 (ATB), 2023 WL 3318488, at *10 (N.D.N.Y. May 9, 2023) ("Under the regulations, plaintiff's daily activities are a factor the ALJ may properly consider."); *Herrington v. Berryhill*, No. 3:18-CV-0315(WIG), 2019 WL 1091385, at *7 (D. Conn.

Mar. 8, 2019) ("[I]t is beyond cavil that activities of daily living are an appropriate factor for an ALJ to consider when assessing a claimant's credibility.").  In considering activities of daily living, "[t]he issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence." *Morris v. Comm'r of Soc. Sec.*, No. 5:12-CV-1795 MAD/CFH, 2014 WL 1451996, at *6 (N.D.N.Y. Apr. 14, 2014).  This is so because "[o]ne strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the record." *Id.*

Here, in considering whether Plaintiff had an impairment or combination of impairments that meets or medically equals a listing, the ALJ considered, among other things, Plaintiff's ability to drive and go out independently.  (Dkt. 14 at 28).  Specifically, in connection with the conclusion that Plaintiff had a moderate limitation in understanding, remembering, or applying information, the ALJ stated:

> [Plaintiff] said he needs reminders to take medication (B7E/4).  However, he is able to drive a car and go out alone (B7E).  [Plaintiff] has a history of semi-skilled employment.  [Plaintiff] says he has difficulty remembering things (B7E).  [Plaintiff] had some memory deficits at one of the consultative examinations (B15F), but his memory was judged to be intact at the other one (B8F).  At most, [Plaintiff] has moderate limitation in this area.

(*Id.*).  Similarly, when concluding that Plaintiff had moderate limitations in concentrating, persisting, or maintaining pace, the ALJ stated:

> With regard to concentrating, persisting or maintaining pace, [Plaintiff] has a moderate limitation.  [Plaintiff] reported that he has problems paying attention and cannot follow written or spoken instructions, but he does have a driver's license and drives alone (B7E).  [Plaintiff] reports playing video games for much of the day (B7E).  [Plaintiff's] attention and concentration

were impaired at both consultative evaluations (B8F; B15F). However, [Plaintiff's] medical records show that he is able to participate in his own care and relate his symptoms and medical history and his physician repeatedly notes that attention span and ability to concentrate are normal (B19F). Overall, moderate limitations are supported.

(*Id.*).

Plaintiff argues that "the fact that a person has a driver's license and drives alone certainly is not indicative of their ability to concentrate or remember, as Plaintiff testified to and that, parenthetically, far fewer people might be driving if the requirement were to show proper concentration and attention-paying skills." (Dkt. 17-1 at 4-5). However, as noted, Plaintiff's ability to drive and go out alone were not the only factors contributing to the ALJ's conclusions on these limitations and it was appropriate for the ALJ to consider Plaintiff's activities of daily living in reaching his conclusions. Moreover, in finding Plaintiff's limitations to be moderate, the ALJ credited in part Plaintiff's testimony regarding his limitations. The objection Plaintiff raises to the ALJ's consideration of his activities of daily living essentially amount to discrepancies in the record that were for the ALJ to resolve in determining that Plaintiff is capable performing light work. Plaintiff has not demonstrated that the ALJ's description and consideration of his activities amount to a mischaracterization of the evidence that could undermine the ALJ's conclusions. *See Ortiz v. Saul*, No. 1:19-CV-00942 (ALC), 2020 WL 1150213, at *7 (S.D.N.Y. Mar. 10, 2020) ("In addition, evidence in the record demonstrated Plaintiff's ability to perform a range of light household chores, including cooking, shopping, cleaning, and laundry; Plaintiff similarly was able to use public transportation without assistance. . . . Courts have found these activities, along with consistent medical opinions, support a light work RFC

finding."); *Basta v. Comm'r of Soc. Sec.*, No. 18-CV-0986L, 2019 WL 6713616, at \*5 (W.D.N.Y. Dec. 10, 2019) ("Accordingly, I find that the ALJ did not mischaracterize Basta's activities of daily living.  The ALJ referenced evidence both supportive of and contrary to Basta's impairments.  Weighing this evidence, the ALJ acted within his discretion in concluding that Basta had a greater functional ability than alleged." (internal quotation marks omitted)); *Herrington v. Berryhill*, No. 3:18-cv-0315(WIG), 2019 WL 1091385, at \*7 (D. Conn. Mar. 8, 2019) ("[I]t is beyond cavil that activities of daily living are an appropriate factor for an ALJ to consider when assessing a claimant's credibility." (collecting cases)).

In sum, the Court is not persuaded that the ALJ erred in considering Plaintiff's ability to drive and go out by himself in connection with the assessment of Plaintiff's overall limitations.  Remand is not warranted on this basis.

**B.     Treatment of Russell Lee, M.D.'s Opinion**

Plaintiff's second argument is that the ALJ failed to properly assess the opinion of Dr. Lee.  The Court disagrees.

Dr. Lee, a consultative examiner, examined Plaintiff on January 31, 2020 (Dkt. 14 at 733-36) and September 4, 2020 (*id.* at 802-05).  At the January 2020 examination, Dr. Lee noted Plaintiff's history of intermittent lower back pain occurring with standing or walking.  (*Id.* at 733).  He noted that Plaintiff appeared to be in no acute distress with normal gait and used no assistive devices.  (*Id.* at 744).  Dr. Lee concluded that Plaintiff has moderate limitations "to activities involving prolonged standing and walking great distance" and should "avoid smoke, dust, and known respiratory irritants." (*Id.* at 736).  At

the September 2020 examination, Dr. Lee noted that Plaintiff reported that his lower back pain was now constant and "a sharp pain varying in intensity between a 5 and a 10." (*Id.* at 802). Again, Dr. Lee noted that Plaintiff appeared in to be in no acute distress with normal gait and stance and was able to rise from the chair without difficulty. (*Id.* at 803). Dr. Lee concluded that Plaintiff has moderate limitations with activities involving prolonged sitting, prolonged standing, walking great distances, bending, and lifting. (*Id.* at 805).

The ALJ noted that Dr. Lee's inclusion of restrictions on bending and sitting "appear to be based on [Plaintiff's] subjective reports." (*Id.* at 31). The ALJ found Dr. Lee's opinions persuasive, except with respect to the limitations regarding sitting and bending included in his September 2020 opinion. (*Id.* at 32).

Under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id.* Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other

factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. at §§ 404.1520c(c), 416.920c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id*. at §§ 404.1520c(a), 416.920c(a). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(1). With respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id*. at §§ 404.1520c(b), 416.920c(b). "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec*., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted). Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical

source's opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ may—but is not required to—explain how he considered the remaining factors.  *Id.*

While the ALJ could have provided a more robust discussion of Dr. Lee's opinion, the Court concludes that it was not improper when reviewed in context of the ALJ's decision in its entirety.  *See Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (holding that if an ALJ commits "procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record[,]" the court "could affirm if a searching review of the record assures [the Court] that the substance of the [regulation] was not traversed" (internal quotation and citation omitted)).  Notably, as a consultative examiner, Dr. Lee's opinion may serve as substantial evidence supporting the RFC.  *See Frank T. v. Comm'r of Soc. Sec.*, No. 1:20-CV-500 (WBC), 2021 WL 3635212, at *4 (W.D.N.Y. Aug. 17, 2021) ("[T]he opinion of a consultative examiner may constitute substantial evidence that the ALJ can rely on to determine Plaintiff's RFC.").  Further, while Plaintiff contends that the ALJ's statement that portions of the opinion were only supported by subjective reports was "disingenuous," a lack of positive objective findings can be an appropriate consideration.  *Matthew E. v. Comm'r of Soc. Sec.*, No. 1:21-CV-73 (JLS), 2023 WL 5012186, at *6 (W.D.N.Y. Aug. 7, 2023) ("[T]he ALJ properly noted the lack of positive findings on examination in her assessment of Plaintiff's subjective complaints.").  In addition, Plaintiff has not identified any objective evidence of record overlooked by the ALJ or that otherwise contradicts his conclusion regarding Dr.

Lee's opinions.  Accordingly, on the record before it, the Court finds no reversible error in the ALJ's consideration of Dr. Lee's opinion.

### C.    Past Work

Plaintiff argues that the ALJ did not significantly stress that Plaintiff's longest period of work constituting substantial gainful activity was in a sheltered workshop.  He argues that "the fact that a person is deemed eligible for sheltered employment argues against being able to function in the public workforce." (Dkt. 17-1 at 5).  But the ALJ did address Plaintiff's past work and hear testimony from both Plaintiff and the VE about the nature of Plaintiff's past work, including his previous use of a job coach and work in a sheltered job setting.  (Dkt. 14 at 52-57; 63-65).  It is "[t]he Commissioner, not the courts, [who] 'weigh[s] the conflicting evidence in the record' and resolves such conflicts." *Mazzola v. Comm'r of Soc. Sec.*, No. 19-CV-1158 (WFK), 2023 WL 5661986, at *1 (E.D.N.Y. Sept. 1, 2023) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)); *see also Gabrielle C. v. Comm'r of Soc. Sec.*, No. 21-CV-00567-LJV, 2023 WL 5200159, at *1 (W.D.N.Y. Aug. 14, 2023) ("The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012)).  Here, Plaintiff cites no legal authority for his argument that it was error for the ALJ to not give greater weight to the fact that Plaintiff's previous employment was in a sheltered environment.  The ALJ appropriately considered the nature of Plaintiff's past employment in determining Plaintiff not capable of performing his past

relevant work and substantial evidence supports that determination.   Accordingly, this argument does not constitute a viable basis to warrant remand.

**D.     Plaintiff's Representative**

Finally, Plaintiff contends that while not dispositive, it is "important to mention" that Plaintiff's representative at the hearing was terminally ill and passed away a year later. Plaintiff identifies no error committed by the representative[2] or any other basis to suggest that the representation was ineffective or otherwise affected the outcome and accordingly, the nature of this argument is wholly unclear.   As a result, it may not serve as a basis for remand.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 19) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 17) is denied.   The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.


ELIZABETH A. WOLFORD
Chief Judge
United States District Court


Dated:  September 6, 2023
          Rochester, New York

---

[2]     While Plaintiff notes that the representative submitted material prior to Plaintiff's alleged onset date, he then argues that the material demonstrates the chronic nature of Plaintiff's impairments so it is unclear whether this point is a criticism of the representative.